FIRST SOUTH SAVINGS ASSOCIATION, et al., Plaintiffs,

v.

Walter S. BURNAP, et al., Defendants.

Civ. A. H–89–2720.

United States District Court, S.D. Texas.

Oct. 7, 1993.

---

Walter J. Cicack, Myers, Orlando & Evans, Houston, TX, for First South Sav. Ass'n.

Diana Dowd Ulrich, Kristianne Hincamp, Ulrich & Ulrich, Houston, TX, for Walter S. Burnap.

Hugh E. Sabel, San Antonio, TX, for Lester L. Kelly.

Frank Jones (AIC), Fulbright and Jaworski, Diana Dowd Ulrich, Ulrich and Ulrich, Houston, TX, for Kittie Partners and Willard H. Burnap.

Carmellia C. Boyer, Zimmerman, Flaum & Axelrad, P.C., G. Scott Williams, Houston, TX, for Resolution Trust Corp.

## OPINION ON REASONABLENESS OF SETTLEMENT

HUGHES, District Judge.

### 1. *Introduction.*

Willard Burnap and Kittie Partners 1984–1 have asked this court to find that a settlement by two other defendants with the Resolution Trust Corporation is unreasonable because it is a beggar-thy-neighbor agreement, commonly called a Mary Carter agreement, and it is against Texas public policy. Mary Carter deals are devised after a lawsuit. The agreements in this case existed three years before the government attempted to collect on a defaulted note. The court concludes that the settlement is not a Mary Carter agreement, and the court finds that it is reasonable.

### 2. *Background.*

In 1984, Walter Burnap, Lester Kelly, Max Burleson, and Daniel Linnartz formed Kittie Partners 1984–1. At the partnership's formation, Walter Burnap issued a promissory note for $3,200,000 to First South Savings Association. Linnartz, Burleson, and Kelly guaranteed payment. Willard Burnap, Walter Burnap's father, joined the partnership later that year. In 1985, the partners agreed to modify the note to obligate Kittie Partners itself to First South.

In 1986, Linnartz and Burleson withdrew from Kittie Partners and entered into release and indemnity agreements with the remaining partners: Willard Burnap, Walter Burnap, and Lester Kelly. By January 1, 1988, Walter Burnap was the sole partner. On January 4, 1988, Kittie Partners sold all of its assets and liabilities to Kittie Petroleum, Inc., and First South agreed to look to Kittie Petroleum first for payment on the note. While First South released the partners of Kittie Partners from liability on the note, it did not release Walter Burnap and those who had personally guaranteed payment, including Linnartz and Burleson. After the note went into default in 1989, First South foreclosed, leaving a deficiency of $1,352,583.95. The government seized First South and sued Walter Burnap, Linnartz, Burleson, Kelly, and the partnership in August of 1989.

On January 30, 1990, the RTC struck a deal with Linnartz and Burleson. In exchange for Linnartz and Burleson's agreeing to a judgment against them for the full deficiency plus an assignment of their rights under the indemnity agreement, the RTC agreed to seek full recovery against Kittie Partners and the remaining partners before trying to collect from Linnartz and Burleson under the agreed judgments. If the RTC was unable to get a judgment against Kittie Partners and the individual partners under the indemnity agreement, then Linnartz and Burleson together would pay the RTC $25,000. If Linnartz and Burleson did not pay the $25,000 within 30 days or if Kittie Partners and the individual partners had no liability under the indemnity agreements, then the RTC could abstract the agreed judgments.

In February 1990, the RTC added Willard Burnap as a defendant, claiming recovery under the indemnity agreement. In February 1990, the RTC nonsuited Walter Burnap because he filed for bankruptcy. The court

dismissed Kelly in October because he filed for bankruptcy.

This court granted the RTC a judgment against Kittie Partners on the note and against Willard Burnap on the indemnity agreement for the full deficiency plus interest and made final the agreed judgments between Linnartz and Burleson. Willard Burnap and Kittie Partners appealed. The court of appeals affirmed the summary judgment, but it remanded the case for an express finding on the reasonableness of the settlement amount between the RTC and Linnartz and Burleson. Willard Burnap and Kittie Partners moved for summary judgment on the grounds that the settlement is unreasonable because it is a Mary Carter agreement.

### 3. *Mary Carter Agreement or Hard Ball?*

■ Willard Burnap and Kittie Partners argue that the settlement reached by the RTC, Linnartz, and Burleson is a Mary Carter agreement that is void under Texas law and policy. *Elbaor v. Smith,* 845 S.W.2d 240 (Tex.1992). A Mary Carter agreement exists when (a) the plaintiff settles with one defendant and prosecutes the remaining defendants, and (b) the settling defendant remains a party and pays the plaintiff a minimum payment that may be offset by the trial judgment against the others. *Elbaor,* 845 S.W.2d at 247. These agreements encourage only partial settlement, and they leave a lopsided trial against non-settling defendants. Because a settling defendant has a financial interest in the plaintiff's recovery, he will often assist vigorously in the prosecution of the other defendants.

The principal difference between a Mary Carter agreement and this settlement is the chronology. A Mary Carter sequence is: loss, lawsuit, agreement. For example, an injury victim sought medical treatment; that treatment left her disabled. Before the trial, she settled with the hospital and two of the three doctors. The settling doctors and hospital remained parties and were to be reimbursed their settlement money from the recovery against the third doctor. The doctors and hospital had no earlier liability among themselves or indemnity agreements. That

they were the doctors on call and that a particular hospital was chosen was fortuitous. *Elbaor,* 845 S.W.2d 240.

■ The sequence of events here is: contract, loss, lawsuit, agreement. The contract that precedes the loss removes this settlement from the post-loss deals of Mary Carter. A Mary Carter agreement does not exist when liability is predicated on agreements in existence before the loss occurred. Long before the default and foreclosure, Willard Burnap had agreed to indemnify Linnartz and Burleson from claims arising from the guaranty on the note. That they were all defendants was not fortuity, but they had pooled their liability by contractual design. After the loss or default, Linnartz and Burleson assigned to the RTC their pre-loss rights of indemnification, giving the RTC the right to seek recovery from Willard Burnap. Linnartz and Burleson had the right to recover from him before the lawsuit. This is not a case where the plaintiff entices only some of multiple, otherwise unconnected defendants to abandon their defense and join the plaintiff.

The effect of the settlement was to force the RTC to recover from Willard Burnap and Kittie Partners first. The agreement did not release Linnartz and Burleson from their ultimate obligation.

If X and Y are jointly in debt to Z, X can pay Z a dollar to collect from Y first. This is what Linnartz and Burleson have accomplished through the settlement. While they are still liable on their guaranty, they encouraged the RTC to seek recovery against Willard Burnap and the partnership first. There is always an incentive for co-defendants to turn on each other; every means of self-first is not necessarily a Mary Carter agreement.

### 4. *Reasonableness.*

■ The settlement between the RTC and Linnartz and Burleson was reasonable. Willard Burnap's primary argument is that it is unfair that he has to pay the whole judgment, because he cannot afford it. Fairness and ability to pay are not synonymous, and they are not the standard. Commercial rea-

sonableness is the standard. The state of mind of the individuals making the agreement is irrelevant. The objective facts are relevant. Linnartz and Burleson sought to protect themselves at the expense of their ex-partner. These parties were not thrown together unexpectedly, as in a personal injury case. They had been in business together for years.

Before and after the loss, Willard Burnap owed the money. Before and after Linnartz and Burleson struck the deal with the RTC, Burnap owed the money. His position never changed. Linnartz and Burleson took the opportunity to change their position because they could not afford to defend a lawsuit against the RTC nor could they afford to prosecute on the indemnity agreement. Linnartz and Burleson knew that they had no defenses to the note and that they had entered into an indemnity agreement. They simply assigned to the RTC their rights under the indemnity agreement as a way of truncating an unpleasant lawsuit. Their decision was economic.

The RTC chose to concentrate its collection efforts on Willard Burnap and Kittie Partners. Knowing that Linnartz and Burleson had rights of indemnity against Willard Burnap and that Linnartz and Burleson couldn't afford even the legal costs, the RTC chose to short-circuit collection efforts and pursue the person and entity with ultimate liability.

At this late date, Willard Burnap has yet to proffer that Linnartz and Burleson had finances that were unknown to the RTC that would have persuaded the RTC not to settle with Linnartz and Burleson. He says, in effect, that it is not fair that his partners legally abandoned him. There is nothing commercially unreasonable about the settlement. Linnartz and Burleson wanted out, and the RTC wanted to recover its money quickly. Because Willard Burnap indemnified Linnartz and Burleson, he must now pay what he owes.

5. *Conclusion.*

A cynic would say that the loyalty of Linnartz and Burleson to their wallets exceeded their loyalty to their former partner. A mil-

lion-dollar debtor would say that Linnartz and Burleson merely eliminated one costly step of litigation. Rather than pay the government and then turn around and collect that money from Willard Burnap, Linnartz and Burleson just allowed the government to pursue the partnership and Willard Burnap first. Either way, Kittie Partners and Willard Burnap lose.